**FURLONG AND KRASNY**
ATTORNEYS AT LAW
Mountain View Office Park
820 Bear Tavern Road, Suite 304
West Trenton, New Jersey 08628
mail@furlongandkrasny.com

JOHN S. FURLONG*
jfurlong@furlongandkrasny.com
SCOTT A. KRASNY*
skrasny@furlongandkrasny.com

Telephone:
(609) 882-0288
Facsimile:
(609) 883-2551

* Certified by the Supreme Court of New Jersey
as a Criminal Trial Attorney

March 29, 2023

**Via ECF**
Hon. Peter G. Sheridan, U.S.D.J.
United States District Court
District of New Jersey
Martin Luther King Building & US Courthouse
50 Walnut Street
Newark, New Jersey 07102

Re:   USA v. Anthony Villanueva and Drew Inman
      Case No.: 3:19-cr-00292-PGS

Dear Judge Sheridan:

This office represents Defendant Drew Inman in the captioned matter and would join in the motion filed March 28, 2023 by Defendant Villanueva to suppress certain audio and video recordings. Please accept this letter memorandum in further support of that in limine application.

## STATEMENT OF FACTS[1]

On April 9, 2017, Trenton Police Officers pursued an individual later identified as Chanzie Washington, who had eluded law enforcement attempting to effectuate a traffic stop. Washington first eluded by vehicle and later by foot. He swam across the Delaware Raritan Canal in further effort to escape arrest. A multitude of officers took part in the

---

[1] The Statement of Facts is limited to those at issue in the Motion.

vehicle and foot pursuits of Washington and his ultimate apprehension. Body worn cameras (BWC) of various officers captured audio and video footage of the event from different locations.

Defendant Inman, a responding officer, pursued Washington on foot, crossed the canal via bridge, and took part in the ultimate apprehension of Washington. BWCs of officers standing on the Passaic Street side of the canal, from which Washington had entered the canal, captured portions of the event and audio from persons on that side of the canal as well as from across the canal where additional officers, many without BWCs, were standing in a parking lot separated by a fence from Washington.

The proposed Government Exhibit List includes body worn cameras of the officers and draft transcripts of the audio portions[2]. The video and audio portions of the BWCs should be suppressed.

## ARGUMENT

### The bulk of the audio on the BWCs constitutes inadmissible hearsay.

The bulk of the audio portions of the BWCs cannot be admitted in the Government's case since they are hearsay in violation of Fed. R. Evid. 801. The Government's trial brief clearly suggests that a multitude of statements made by Washington and officers, other than Defendants Villanueva and Inman, will be offered to support an argument that Washington was compliant with police commands and the victim of excessive force. As such, the statements are clear hearsay – out of court declarations being offered for the truth of the matter asserted. The admission of the audio portion of the statements, as well as any transcript if offered, would not be subject to cross examination and are violative of *Crawford v. Washington*, 541 U.S. 36 (2004). Clearly, the appropriate course of conduct would be to call witnesses to testify from first-hand knowledge.

---

[2] It is not expected the Government intends to move the transcripts into evidence, rather to mark them for identification and use them as a jury aid.

Draft transcripts provided by the Government confirm that the vast majority of statements captured are from persons other than the wearer of the BWC. Additionally, the transcripts are replete with references that the speaker is "unidentified". In all, audio recordings from nineteen officers at the scene have been marked as potential exhibits. The admission of those audios would confuse the jury, waste time and produce delay, and would be needlessly cumulative and repetitive, all in violation of Fed. R. Evid. 403. The audio portions of BWCs worn by officers, other than the Defendants, have insignificant probative value in that commands or statements of other officers allegedly given, could not be heard and/or understood by the Defendants. Any probative value is substantially outweighed by the likelihood of unfair prejudice to the Defendants. See Fed. R. Evid. 403.

### The video portions of the BWCs are not relative evidence.

Pursuant to Fed. R. Evid. 401, evidence is relevant if it: (a) has a tendency to make a fact more or less probable than it would without the evidence, and (b) if the fact is of consequence in determining the action. With the arguable exception of the body worn camera of Defendant Inman[3], video portions of BWCs of the other officers have no relevance to the issues at hand.

In Count I, Defendant is charged with deprivation of rights under color of law in violation of 18 U.S.C. §242 and §2, specifically by willfully depriving Washington of the rights secured and protected by the Fourt Amendment of the Constitution and laws of the United States, to be free of an unreasonable search and seizure. The Fourth Amendment prohibits the use of unreasonable force when making an arrest. *Graham v. Connor*, 490 U.S. 386, 396 (1989).

"[A]ll claims that law enforcement officers have used excessive force... in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be

---

[3] Discovery provided by the Government to date and the proposed Exhibit List do not reference any BWC of Defendant Villanueva, so it does not appear that one exists.

analyzed under the Fourth Amendment and its 'reasonableness' standard...". *Id.* at 395. This Fourt Amendment '"reasonableness' inquiry in an excessive force case is an objective one: the question is whether the defendant officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation". *Id.* at 397. Here, the issue is whether Defendant's actions were "objectively reasonable in light of the facts and circumstances", considering, among other things, the severity of the crime, the threat to the safety of the officers or others, and whether the suspect resisted or attempted to evade arrest. <u>El v. City of Pittsburgh</u>, 975 F. 3d 327, 336 (3d. Cir. 2020). As a result, videos of officers separated by a canal or fence from a fleeing suspect are of little relevance in determining the reasonableness of Defendant's actions in an analysis of the claims in Count I.

The elements of a violation of §242 require that Defendant: (1) was acting under color of law, (2) deprived Washington of his right to be free of unreasonable search and seizure, (3) acted willfully in depriving Washington of this right, and (4) caused bodily injury to him. <u>United States v. Linier</u>, 520 U.S. 259, 264 (1997). The audio and video recordings of officers, many of which were not involved in the arrest of Washington or were separated by physical barriers from that arrest, have no relevance in determining the willfulness of Defendant's actions. As with the audio portion, the video portion of other officers' views or sounds from different vantage points are without probative value on the issue at hand and a limiting instruction cannot be fashioned to cure the prejudice or confusion created in violation of Fed. R. Evid. 403.

For these reasons the Court should preclude the Government from using audio and video camera recordings by any non-defendant officers.

Respectfully,

SCOTT A. KRASNY

SAK/so

S:\Clients-Open\Inman, Drew\Letter Memorandum to Judge Sheridan 03-29-23.docx