

U.S. Department of Justice

*United States Attorney*
*District of New Jersey*

---

*402 East State Street, Room 430*  *609-989-2190*
*Trenton, New Jersey 08608*

June 5, 2023

Honorable Peter G. Sheridan, U.S.D.J.
United States District Court
Clarkson S. Fisher Building & U.S. Courthouse
402 E. State Street
Trenton, New Jersey 08608

      Re:    United States v. Inman
                  19-292 (PGS)

Dear Judge Sheridan:

    Defendant Drew Inman has moved, pursuant to Fed. R. Crim. Pro. 29, for a judgment of acquittal.  ECF No. 120.  But neither of his two theories of acquittal, (1) the Government's rebuttal argument was improper, prosecutorial misconduct and (2) there was insufficient evidence to convict, support the relief he requests.  His motion should be denied.

## Relevant Background

    At trial, the Government's evidence included, among other things, 19 body-worn camera videos.  Government Exhibit 114, the body camera video from Officer Maria Paccillo (the "Paccillo BWC"), provided the most complete view of the officers' interactions with Mr. Washington.  From that video, Officer Drew Inman can be seen hitting Mr. Washington twice, using a flashlight in the process (a fact he has yet to deny). The Government pointed to the flashlight's reflective end in Officer Inman's hand as he gathers prior to the second punch.  The Paccillo BWC was shown numerous times during the trial, as well as during opening statements and the closing arguments of the parties.

    The jury also heard from nine witnesses, including the victim, Chanzie Washington, about the night of April 9, 2017.  Mr. Washington testified to his failed effort to elude the police, and the beating he received, shown on the Paccillo BWC, after he surrendered.  He described how it felt:

        Q. When you were punched, did it hurt?

        A. Yes.

>Q. What did it feel like?
>
>A. It felt like ***I was hit with something that wasn't human***.
>
>Q. What do you mean by that?
>
>A. ***It was solid*** when it hit my bone.

Transcript May 4, 2023, p. 395 at 16-21 (emphasis added).

The jury also heard from Government witness Stephen Notta, who testified about the defendants' Use of Force training and the Attorney General Guidelines:

>Q. Were they ***taught*** specifically a baton or ***any object could be used as mechanical force***?
>
>A. Any object could be used. If you strike somebody with your handcuffs, that's mechanical force.
>
>Q. Flashlight?
>
>A. ***Flashlight, mechanical force***.

Transcript May 1, 2023, p. 93 at 3-8 (emphasis added).

The thrust of the Government's initial summation was that the severe nature of the beating by both Officers upon Mr. Washington violated his civil rights. To underscore that, it replayed the relevant portion of the Paccillo BWC, including the reflective glare that the Government later contended would confirm for the jury that Inman struck Washington with the flashlight.

Inman's summation, however, contended an officer is permitted to use mechanical force, characterized the punches to Washington as calculated to gain control of Washington's hands, and rejected the Government's contention that Inman himself was about to describe his actions as having "beat the living shit" out of Washington before being silenced and cut off by Officer Johnson. Transcript May 8, 2023, p. 752 at 6-18; 760 at 10-12; 767 at 14-17.

To reinforce those defenses, counsel for Villanueva attacked Washington as a con man. He called him a liar and told the jury that Washington has exaggerated the incident, pretending to be hurt and playing it up for the cameras.

Those summations downplayed the severity of the beating and characterized Washington as a liar for contending otherwise. That directly invited the Government to respond, why, based on the evidence, the jury could believe Mr. Washington. It pointed to the Paccillo BWC and submitted to the jury that it "***shows he has his flashlight*** in his hand, that he is using the flashlight when he punches Chanzie Washington. *So, when* Chanzie Washington ***cries out in pain, you can believe it***." Transcript May 8, 2023, p. 813 at 4-11 (emphasis added). Again, directly responding to the attacks on Washington and the attempts to downplay the beating, the Government commented on evidence in the record by urging the jury to draw their own conclusions, from the video, as to the type of force

used: "You will have ***this video*** and you can ***watch it***, but the video is clear. ***You see the reflective end of the flashlight*** in Officer Inman's hand. *Id*. at 13-15 (emphasis added).

Counsel for Inman objected at the time of this argument, and after the conclusion of summations, argued the Government's mention of the flashlight was improper. The Government responded that this argument was both fair comment on the evidence and appropriate response to the defendants' summations. Because of the objections, the Court chose to include in the final jury instructions this statement, slightly modifying the model final instruction:

> The following is not evidence: The indictment, statements and arguments of the lawyers for the parties in this case, including the prosecutor's rebuttal argument on Exhibit 114; questions by the lawyers and questions that I may have asked; objections by lawyers, including objections which the lawyers -- which lawyers stated facts.

Transcript May 9, 2023, p. 850-851 at 24-4.

After almost five full days of deliberations, the Jury returned a not guilty verdict on all counts, save for Count One against Officer Inman. On that count, they were unable to reach a verdict. Over the objection of defendant Inman, who suggested the jury should continue to deliberate, the Court granted a mistrial on Count One against Inman, finding the mistrial to be manifestly necessary under the circumstances.

Inman now files the within motion for a Judgment of Acquittal. For the reasons set forth below, Inman's motion should be denied.

**I.   Inman Has No Valid Legal Or Factually Sufficient Basis Under Rule 29 For A Judgment Of Acquittal.**

**A. Allegations Of Prosecutorial Misconduct Provide No Basis For A Rule 29 Motion For Acquittal.**

As a factual matter, Inman's claim of prosecutorial misconduct has no basis because it is not misconduct to respond to a defendant's summation by pointing to record evidence. That is explained in more detail below.

But Inman's Rule 29 motion fails for a more fundamental reason as a matter of law: Even had misconduct occurred, the only available relief would be the grant of a new trial – a remedy Inman already enjoys based upon the Court's ruling of a mistrial on Count 1. Alleged prosecutorial misconduct is not a valid basis for a judgment of acquittal under Rule 29

Relief under Federal Rule 29 is only available for challenges to the sufficiency of the evidence. *See United States v. Hawari-Rasulullah*, No. 3:21-CR-66, 2023 WL 2472598, at *9 (M.D. Pa. Mar. 10, 2023) (only sufficiency of the evidence issues are the basis for Rule 29 motions for acquittal; allegations of prosecutorial misconduct do not qualify); *Roberts v. People*, 76 V.I. 555, 582, *denied sub nom. Roberts v.*

*Territory of Virgin Islands*, 143 S. Ct. 458, 214 L. Ed. 2d 261 (2022) (Rule 29 is inapplicable to claims of prosecutorial misconduct); *Davis v. People*, 69 V.I. 619, 628 (2018) (same); *United States v. Miranda,* 425 F.3d 953, 962 (11th Cir. 2005) ("**The sole ground** for a post-trial motion under Rule 29(c) **is that the evidence was insufficient** to sustain a conviction." (cleaned up; emphasis added)).

Instead, any supposed prosecutorial misconduct is evaluated under Rule 33. That type of motion, which Inman has not brought, permits a new trial when it is in the interest of justice. *United States v. Dixon,* 658 F.2d 181, 193 (3d Cir. 1981); *United States v. Ford*, 618 F. Supp. 2d 368, 371 (E.D. Pa. 2009) ("In moving for acquittal due to prosecutorial misconduct, Ford mistakes his remedy. A finding of prosecutorial misconduct would call for setting aside the verdict with a view to retrial (Rule 33(a)), not entering a judgment of acquittal.").

But, as noted, Inman has not brought a motion for a new trial under Rule 33, likely because he already received that remedy when the jury failed to reach a verdict on Count 1 and the Court declared a mistrial. He is not entitled to any additional relief as a matter of well-settled law under Rule 29. His motion for acquittal must be denied.

### B. Defense Counsel Invited The Government's Fair Response, Based On The Evidence, To Attacks On The Government's Case.

In summation, the Government is "entitled to considerable latitude ... to argue the evidence and any reasonable inferences that can be drawn from that evidence." *United States v. Werme*, 939 F.2d 108, 117 (3d Cir. 1991); *United States v. Onque*, 169 F. Supp. 3d 555, 571 (D.N.J. 2015), *aff'd*, 665 F. App'x 189 (3d Cir. 2016). In particular, it may "ask the jury to draw permissible inferences from anything that appears in the record," *United States v. Sullivan*, 803 F.2d 87, 91 (3d Cir. 1986), and in rebuttal, it is permitted to respond to arguments advanced by the defendant in summation and specifically answer arguments raised by the defense. *United States v. Brown*, 765 F.3d 278, 296 (3d Cir. 2014); *United States v. Taylor,* 728 F.2d 930, 936 (7th Cir.1984) (same).

Misconduct on the theory that Inman espouses (that the specific reference to the flashlight was somehow improper) only occurs when arguments are made, not on admitted evidence (here, the Paccillo BWC), but are instead based on personal belief or knowledge, *United States v. Zehrbach*, 47 F.3d 1252, 1266 n.11 (3d Cir. 1995), or a prosecutor's personal opinion concerning the defendant's guilt or the witnesses' credibility. *Id*. at 1265, (citing *United States v. Young*, 470 U.S. 1, 18-19 (1985). As long as a response to defense arguments is not inflammatory, but based on record evidence, it is proper under the invited response doctrine. *United States v. Wood*, 486 F.3d 781, 788 (3d Cir. 2007), *quoting United States v. Walker*, 155 F.3d 180, 186 n. 5 (3d Cir.1998) (internal quotations and citation omitted); *see also United States v. Dispoz–O–Plastics, Inc.*, 172 F.3d 275, 284 (3d Cir.1999); *United States v. Pelullo*, 964 F.2d 193, 218 (3d Cir.1992.)

Here, far from an improper "new argument," Def. Br. at 7, the Government directly responded to the defense summations about the amount and type of force used and defended attacks on the victim's credibility. The sequence of events during summation and rebuttal shows why that cannot possibly amount to prosecutorial misconduct.

The Government argued in summation Inman and his codefendant "beat" the victim. (Transcript May 8, 2023, 696 at 14-18). It urged the jury to "[w]atch as Drew Inman cocks his elbow back and delivers this strike to Chanzie Washington's body . . . calculated to hurt Chanzie Washington."(Transcript May 8, 2023, p. 717 at 23-25. It also pointed out what the record showed about post-assault comments made by Inman: "He was going to say, 'I beat the living shit out of him,' which he did." Transcript May 8, 2023, p. 722 at 18-19.

Counsel for Inman responded by challenging the Government's theory and offered his own characterization of the punches, stating that they were "calculated to hit a guy in the back to get his arm out from under him," and that, "Drew Inman did not 'beat the living shit' out of that suspect. That's just a fact." Transcript May 8, 2023, p. 760 at 10-12 and 767 at 14-17.

Defense counsel directly raised the issue of the use of mechanical force when discussing the Attorney General Guidelines:

> Well, the AG guidelines have taught us now law enforcement can use force. They can use force and they can initiate force. They don't have to wait for force against them. They could punch or strike or punch hard if that was to serve a lawful purpose. And that purpose is described in the guidelines. A law enforcement officer may use physical or *mechanical force* when the officer reasonably believes it's immediately necessary at the time to overcome resistance -- overcome resistance -- protect the officer and others, or to effect other lawful objectives such as to make an arrest.). The police can use *mechanical force*, physical force, to do those things, to arrest somebody, to overcome resistance, and that's what he did.

Transcript May 8, 2023, p. 752 at 6-18. (Emphasis added).

Moreover, the defense summations were replete with accusations that the victim – a Government witness – was a liar, was pretending, and should not be believed. The defense directly put Washington's credibility at issue:

> This whole thing when he gave that explanation, this was the beginning of the con. I suggest to you do not underestimate the confidence game that Washington was playing. Washington is a street person. He's a con man and a liar and he was playing this up to the nth degree because he was facing really serious charges and he knew how to manipulate your government, and he was successful in doing it. Transcript May 8, 2023, p. 776 at 8-14.

> But this is all part of the con, okay. I didn't have a gun; I didn't have any drugs; I don't know why, I just jumped into the canal; I'm a victim. Takes no responsibility for his conduct, nothing. He's a victim. This is all part of the game. This is all part of the role that he's playing to manipulate the end game. Transcript May 8, 2023, p. 780 at 15-20.
>
> His voice is the loudest voice on the tape. "Oh, you hit me in my face, stop hitting me in my face." He's playing up for the cameras. He's playing this to the nth degree. He said he got hit 70 times. Not likely, okay. Transcript May 8, 2023, p. 794 at 15-20.
>
> And then he made the choice that he was abused and beaten by the police, the same thing he did in the photos in the police department. You see him walking around. He knows there's cameras. He knows what's going on. He knows what's happening. But he's going to play this up because he is going to look like the victim. Transcript May 8, 2023, p. 796 at 7-12.

The combination of those two arguments amounted to the defense that (1) Washington was exaggerating, at best, regarding how badly he was beaten but (2) even if mechanical force was used, it was entirely justified. That teed up the Government's entirely proper rebuttal:

> Then we have Officer Inman and the two punches. I said they were calculated, and they were. These were not, as defense suggested, these split-second decisions; they were thought about. He wanted to punch him like this. Can we go to slide 13, please. I am going to ask you to watch this video closely. This is video 114. *Do you remember we talked about the types of force you can use? . . . There is constructive force, there is physical force, there's mechanical force. You were told mechanical force is the use of an object in the course of committing this force.* Watch Officer Inman's right hand. As he gathers for that second punch, I submit to you that this video shows he has his flashlight in his hand, that he is using the flashlight when he punches Chanzie Washington. *So, when Chanzie Washington cries out in pain, you can believe it. You will have this video and you can watch it*, but the video is clear. You see the reflective end of the flashlight in Officer Inman's hand. I will play it one more time, but you can watch it on your own.

Transcript May 8, 2023, p.812 at 17 to 813 at 1. (Emphasis added).

That was a direct, evidence-based response to the defense arguments that (1) Washington was lying but (2) whatever force was used it was permissible as reasonable under these circumstances. The defense literally invited that response with their strategic decisions and cannot protest when the Government responds.

Inman suggests the impropriety of the Government's rebuttal is proven by the fact that it had a slide ready to use on this point. Def. Br. at 7. Not so. If

anything, that the Government held back and made the point only in rebuttal to a defense argument it thought might occur doesn't show any impropriety: It shows restraint until the defense opened the door by attacking a witness and defending the beating as justified.

Inman also makes a related argument: That the flashlight is not mentioned in the charging language in the Indictment. But that assumes an indictment is designed to be a catalogue of the evidence that the Government will present at trial. By rule, that's clearly not so.

Under Federal Rule of Criminal Procedure 7(c)(1), an indictment must contain only a "plain, concise and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). An indictment meets the requirements of the Rules when it informs the defendant of the statute he is charged with violating, lists the elements of the offense, and specifies the time period during which the violations occurred. *United States v. Huet*, 665 F.3d 588, 595 (3d Cir. 2012). Were Inman correct, and the Government limited at trial to evidence detailed in an indictment, then indictments could no longer be the plain, concise written statements required by Rule 7, but instead would look like trial transcripts.

No greater specificity than that is required so long as there is sufficient factual orientation to permit the defendant to prepare his defense. *United States v. Kemp*, 500 F.3d 257, 280 (3d Cir. 2007). Here, there was no unfairness to Inman. He had ample discovery that addressed all of the evidence presented at trial. That is all that was required.

### C. The Government Presented Sufficient Evidence For A Rational Jury To Convict Inman.

Inman relies on entirely unsupported inferences, based on the jury's partial verdict and the length of deliberations, to conclude that but for the Government's comment on the flashlight evidence, that he, too, would have been acquitted entirely. He insists this means there was insufficient evidence to convict. But a Rule 29 motion must assess the evidence of record, which Inman never does. When that evidence is assessed, there clearly was sufficient evidence for a rational juror to find him guilty.

"Federal Rule of Criminal Procedure 29 provides that the district court, upon the motion of a defendant or upon its own motion, shall enter a judgment of acquittal if 'the evidence is insufficient to sustain a conviction.'" *United States v. Lucas*, 2015 WL 2159320, at *3 (D.N.J. May 7, 2015) (citing Fed. R. Crim. P. 29(a)). "In ruling on a Rule 29 motion, the district court must determine whether any rational trier of fact could have found proof of the defendant's guilt beyond a reasonable doubt based upon the available evidence presented at trial." *Id*. (citing *United States v. Smith*, 294 F.3d 473, 478 (3d Cir. 2002)). Further, "[t]he Court must view the evidence in its entirety, and in the light most favorable to the Government." *Lucas*, 2015 WL 2159320, at *3. "The government must be given the benefit of inferences that may

be drawn from the evidence and the evidence may be considered probative even if it is circumstantial." *United States v. Patrick*, 985 F. Supp. 543, 548 (E. D. Pa. 1997) (citing *United States v. Pecora*, 798 F.2d 614, 618 (3d Cir. 1986)). Accordingly, the movant bears a heavy burden establishing the evidence presented by the Government during trial was insufficient to support a conviction. *Lucas*, 2015 WL 2159320 at *3 (citing *United States v. Gonzalez*, 918 F.2d 1129, 1132 (3d Cir. 1990)).

Count One, charging Inman with using excessive force, was supported by ample evidence to lead a rational jury to find Inman guilty. First, the jury viewed the Paccillo BWC, which shows Inman punch Washington twice with his right hand. And, as commented on in rebuttal, this video also shows Inman holding a flashlight in his right hand prior to inflicting the second punch. Second, the jury had the benefit of Officer Johnson's body camera video, which captures Inman as he enters his partner's car following the arrest and states, "I just beat the living –" and is cut off by his partner before he can finish the sentence. Additionally, the jury had the surveillance footage from the Trenton Police Department, which captured Inman reenacting the punch he inflicted upon Washington. The jurors also heard from nine witnesses, including the victim, who provided important and detailed testimony about his own actions and that of Inman.

Ignoring all other evidence against him, Inman speculates the only reason the jury did not reach a not guilty verdict against him on Count One was because of the Government's rebuttal argument.[1] That is an attempt to transform what already is a failed argument about prosecutorial misconduct into one about the sufficiency of the evidence.

But as this Court specifically instructed, a prosecutor's arguments *cannot* be evidence and juries, of course, are presumed to follow such instructions. *Weeks v. Angelone*, 528 U.S. 225, 234 (2000). That means the Government's rebuttal cannot have been the sole reason for the jury's failure to reach any verdict (including one of not guilty) and that its conclusion must have been based on its view of the evidence summarized above. That evidence, along with all reasonable inferences drawn from it in favor of the prosecution, *Pecora*, 798 F.2d at 618, means Inman's sufficiency arguments must fail.

---

[1] Inman argues that the not guilty verdict on the charges against Villanueva is somehow proof that a reasonable jury could not convict Inman on the evidence. But both the actions of, and the evidence against, Villanueva and Inman are different in kind and substance, and such a conclusion cannot be drawn.

For all of the reasons set forth, the Government respectfully requests that the Court deny Inman's motion for a judgment of acquittal and set a date for trial.

Respectfully submitted,

PHILIP R. SELLINGER
United States Attorney

By:  s/ *Martha K. Nye*
Martha K. Nye
R. Joseph Gribko
Assistant U.S. Attorneys